CAMBRIDGE ELECTRIC LIGHT COMPANY *vs.* DEPARTMENT OF PUBLIC UTILITIES.

Suffolk.    October 5, 1955. — February 6, 1956.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Public Utilities.   Electric Light Company.*

The department of public utilities, after fixing under G. L. (Ter. Ed.) c. 164, § 18, a certain price at which new stock of an electric light company might be issued, was not required, in fixing rates under § 94, so to fix them that a market for all the company's stock at that price would be maintained.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on September 30, 1952.

The suit was reserved and reported by *Ronan, J.*

*Charles C. Cabot,* (*Henry V. Atherton* with him,) for the plaintiff.

*Matthew S. Heaphy,* Assistant Attorney General, for the defendant.

QUA, C.J.   Cambridge Electric Light Company, hereinafter called the company, filed this bill in equity under G. L. (Ter. Ed.) c. 25, § 5, before that section was recast by St. 1953, c. 575, § 1, to secure the annulment of an order of the department dated August 1, 1952, and known as "D. P. U. 9781," fixing rates to be charged by the company for its service.[1]

Most of the issues normally presented in a rate case are absent here because the case comes to us upon a case stated, with a stipulation as to the disposition to be made of it in the event of our ruling one way or the other on the single question of law intended to be submitted for our decision.

Agreed facts sufficient for an understanding of that question may be shortly stated.   On May 29, 1946, the plaintiff petitioned the department to approve an issue of 4,000 additional shares of its common stock having a par value of $25 a share and to be sold at $125 a share.   The company could issue only such amount of stock as the department should vote to be reasonably necessary for the purpose for which it was authorized, G. L. (Ter. Ed.) c. 164, § 14, as most recently amended by St. 1935, c. 222; and the vote of the department must be based on the price fixed by the directors "unless the department deems that such price is so low as to be inconsistent with the public interest, in which case it may fix the price at which such shares may be issued." § 18.   The department, exercising its authority under § 18, decided on June 28, 1946, that a price of $150 a share was in the public interest and approved an issue of 3,400 shares at that price instead of the 4,000 shares at $125 a share petitioned for.   On four subsequent occasions,

---

[1] Section 2 of the act of 1953 provided that the act should take effect on September 1 of that year, and that it should not apply to any final decision, order, or ruling made prior to said effective date.

two in 1948, one in 1949, and one in 1951, the plaintiff petitioned for authority to issue additional stock at $150 a share, the directors establishing the price at that which had been fixed by the department in 1946. The department granted each of these subsequent petitions.

The plaintiff now contends that since in 1946 the department required the plaintiff to sell 3,400 shares of new stock at $150 a share and the directors fixed the same price for four subsequent issues approved by the department, in fixing rates to the plaintiff's customers in 1952 the department was bound in law to fix such rates as under reasonably efficient management in times of normal or better than normal business activity would maintain a market at approximately $150 a share not only for the 3,400 shares issued in 1946 but necessarily also for the vastly greater number of shares previously outstanding and for those subsequently issued for which the directors themselves fixed the sale price at $150 a share. Whether this contention is sound is the sole question for decision in this case. It seems to be impliedly conceded that the 1952 rates will not be adequate to maintain the stock at $150. The plaintiff describes as "patently unfair and outrageous" the action of the department in requiring new stock to be sold in 1946 at $150 a share and then in 1952 in fixing rates that fall substantially short of maintaining that price.

But however the policy of the department may properly be described the plaintiff's proposition of law cannot be maintained. The department has two distinct statutory duties to perform, each governed by the relevant statutory provisions. One duty is that defined in c. 164, § 18, the so called premium law, to prevent the issue of stock at a price "so low as to be inconsistent with the public interest." The other duty is to fix rates to be paid by the public under § 94. The performance of these two duties is not governed by the same considerations. The department cannot by the manner in which it performs one of these duties disable itself from later performing the other according to law. The theory of § 18 is that it is not in "the public interest"

to allow stock to be issued at a price too far below its current value. The purpose may be to prevent the issue of stock at a price so low as to resemble a stock dividend, which is expressly forbidden by § 11, or it may be to discourage a form of stock watering with its attendant pressure for rates sufficient to pay dividends on the watered stock.[1] Whatever its purpose, the matter to be considered is the value of the stock as reflected in the attitude toward it of potential investors. This depends in turn upon the history of the stock, its dividend record, the skill of the management, the future prospects of the company, its financial strength, the nature and condition of the territory it serves, and other elements, all to be weighed by a prospective purchaser with knowledge of the fact that the company's rates are regulated and may be expected to be generally fair in the future but not oppressive to the consumer. When, on the other hand, perhaps years later, a question of rates arises the issue depends upon what is deemed to be a fair rate of return upon the property of the company used and useful in the public service taken as the rate base upon whatever theory it may be calculated, and with proper attention to the ability of the company to attract additional capital as needed. *Lowell Gas Co.* v. *Department of Public Utilities*, 324 Mass. 80, 96–102. *New England Telephone & Telegraph Co.* v. *Department of Public Utilities*, 331 Mass. 604, 614–617. It seems plain that the two kinds of inquiry which the department may be called upon to make do not follow parallel lines and will not necessarily produce nicely dovetailed results. Moreover, the interval of time which elapses between the decision fixing the price of the stock and the decision fixing the rates may have materially altered the components entering into each of the calculations. And it is always possible that the department, like any other tribunal, may make an error of judgment on one occasion or the other. At all events, the pur-

---

[1] An interesting discussion of this statute is found in a report of the department to the General Court, Senate document No. 315 of 1922.

chaser of stock knows that he has no guaranty that future rates will always support the price of the stock.

It necessarily follows that there is no rule of law requiring the department to fix rates that will forever, or for some indefinite period of time, or for any time, maintain the stock at the price for which it was required to be sold.

As the existence of this alleged rule of law was the only question involved in this case, we have considered nothing else.

In accordance with the stipulation of the parties, a final decree may be entered dismissing the bill.

*So ordered.*